**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

JUN 19 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AMERICAN MEDICAL RESPONSE OF SOUTHERN CALIFORNIA, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> NATIONAL EMERGENCY MEDICAL SERVICES ASSOCIATION, <br><br> Defendant - Appellee. | No. 11-56505 <br><br> D.C. No. 2:10-cv-09672-JHN-MAN <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Jacqueline H. NGUYEN, District Judge, Presiding

Argued and Submitted June 5, 2013
Pasadena, California

Before: TROTT and W. FLETCHER, Circuit Judges, and STEIN, District Judge.**

American Medical Response of Southern California (AMR) appeals the

district court's confirmation of an arbitration award in favor of the National

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The Honorable Sidney H. Stein, District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

Emergency Medical Services Association (NEMSA), a union representing a bargaining unit composed of AMR's former North Hollywood employees. We have jurisdiction pursuant to 28 U.S.C. § 1291.

An arbitrator's decision is entitled to a "nearly unparalleled degree of deference." Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, 886 F.2d 1200, 1205 (9th Cir. 1989) (en banc). "If an 'arbitrator is even *arguably* construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" S. Cal. Gas Co. v. Utility Workers Union of Am., Local 132, 265 F.3d 787, 792 (9th Cir. 2001) (emphasis added) (quoting E. Assoc. Coal Corp. v. United Mine Workers of Am., 531 U.S. 57, 62 (2000)). With this principle in mind, we affirm.

1. The arbitrator's decision was based on "a plausible interpretation" of the collective bargaining agreement and therefore "draws its essence from the contract." See Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc., 84 F.3d 1186, 1190 (9th Cir. 1996) (internal quotation marks omitted). The arbitrator permissibly went beyond the literal terms of the contract and determined that Section 4.03 of the contract did not allow AMR complete discretion in the scheduling of special events shifts. See id. ("[T]he arbitrator is

not bound by precedent or by the record before him; rather, 'the industrial common law -- the practices of the industry and the shop -- is equally a part of the collective bargaining agreement although not expressed in it.'") (quoting United Steelworkers of Am. v. Warrior & Gulf Navig. Co., 363 U.S. 574, 581-82 (1960)). Testimony in the record supports the arbitrator's conclusion that the terms of the collective bargaining agreement did not include "an undisclosed and non-negotiated erosion of special event shift assignments historically performed by NEMSA Unit members, in contrast to the fully negotiated and substantially discussed loss of seniority as the basis for special event assignments."

2. The arbitrator acted within the scope of his authority by framing the issues for decision after it became clear that the parties could not agree on a formulation. An arbitrator's definition of the scope of the issues submitted to him is entitled to "the same deference accorded his interpretation of the collective bargaining agreement." Pack Concrete, Inc. v. Cunningham, 866 F.2d 283, 285 (9th Cir. 1989).

Contrary to AMR's contention at oral argument, Section 18.02 of the contract does not withdraw all authority from the arbitrator simply because AMR and NEMSA did not agree on the scope of the issues. That Section states that the arbitrator's authority is limited to the "resolution of the particular issue(s)

3

submitted to the arbitrator by the Union and the Employer and the authority conferred by this Agreement." NEMSA and AMR each submitted their own interpretation of the issues before the arbitrator, and the arbitrator plausibly determined that NEMSA's grievance was properly before him.

AMR claims that it agreed to arbitrate only the unfair labor practice charge instituted by the National Labor Relations Board (NLRB), not NEMSA's grievance that AMR violated the collective bargaining agreement. But the record contains sufficient evidence that AMR did agree to arbitrate the substance of the grievance -- that it was handing over bargaining unit work to non-unit employees. When asked by an NLRB representative if AMR would "waive any time limits for filing and processing a grievance containing the allegations in [the] amended charge," AMR agreed. The NLRB's deferral letter stated that AMR was "willing to process a *grievance* . . . [and] to waive any time limitations in order to ensure that the arbitrator *addresses the merits of the dispute*." (emphasis added). The letter described the amended charge as "unlawfully subcontract[ing] out bargaining unit work to non-bargaining unit employees," which is very similar to how the Union framed the issue in its grievance. AMR did not dispute that the NLRB's deferral letter was accurate until the arbitration proceeding itself. Having taken advantage of the NLRB's decision to defer the unfair labor practice charge against

4

AMR pending the arbitration of NEMSA's grievance, AMR cannot now complain that it did not agree to that arbitration.

3. Finally, NEMSA has the right to enforce the arbitration award. The record does not support AMR's contention at oral argument that a new union is now representing the North Hollywood employees. The NLRB proceeding currently underway has blocked the pending decertification petitions. Thus, it appears that NEMSA is still certified as the exclusive bargaining representative of the North Hollywood employees. Cf. Sheet Metal Workers' Int'l Ass'n, Local 206 v. W. Coast Sheet Metal Co., 954 F.2d 1506, 1509 (9th Cir. 1992) (stating that provisions of a contract between an employer and a union "have no legal effect when the Union is no longer the certified representative" of the employees).

**AFFIRMED**.